IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DARLENE R. McWREATH, ROBERT C. McBRIDE, KAREN LUNDIN, and DEBORAH L. McWREATH, | ) ) ) ) | Civil Action No. 2:13-cv-00560-NBF |
| Plaintiffs, | ) | Electronically Filed |
| v. | ) | |
| RANGE RESOURCES CORPORATION, | ) ) | |
| Defendant. | ) | |

**DEFENDANT'S MEMORANDUM OF LAW**
**IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Plaintiffs are owners of a portion of the oil and gas in the property at issue. They claim that defendant Range is trespassing on their property and converting their oil and gas rights because Range's oil and gas lease with Plaintiffs (the "Lease") does not convey surface rights. Plaintiffs' claims fail as a matter of law on four independent grounds.

First, Plaintiffs have no standing to challenge Range's use of the surface because it is undisputed that Plaintiffs do not own the surface. Range has a separate agreement with the surface owner, which is all that it needed to use the surface. Second, if Plaintiffs owned a surface right, they have no claim because they signed agreements approving Range's placement of wells on the surface. Third, because Range has a valid Lease with Plaintiffs, the Plaintiffs cannot assert trespass or conversion claims against Range. Range's entry on the property and production of oil and gas from the property is authorized pursuant to the Lease. Plaintiffs will get the royalty provided for under their contract with Range. Fourth, Range has a valid lease with the other owners of the oil and gas in the property, and therefore its use of the surface and production of oil and gas cannot support tort claims by Plaintiffs. Pennsylvania law permits cotenants to authorize the drilling of a well. Finally, Plaintiffs also make a claim for an

accounting but fail to establish any of the required elements for an accounting under Pennsylvania law.

Plaintiffs' real complaint here is that the lease rights they inherited pay lower royalties than new leases taken at current market rates. However, they do not and cannot state any basis to get out of the deal their predecessor made. The Lease is valid and Plaintiffs will receive the royalties they are entitled to under the contract that binds their partial mineral interests. Summary judgment should be entered in Range's favor and the Complaint should be dismissed.

## BACKGROUND

**A.     The Parties.**

The Plaintiffs claim to own an undivided partial mineral interest in approximately 1700.485 acres of property situated in Washington County, Pennsylvania. *See* Complaint at ¶ 3. The Plaintiffs claim to own a 33% interest in the minerals in the majority of the property, and a 66% interest in the minerals in the rest of the property. *See id.* at ¶ 4. That property is subject to an oil and gas lease dated September 20, 2007, entered into between the Estate of David R. McWreath as lessor and Fortuna Energy, Inc. **Exhibit 1**. Two Plaintiffs in this lawsuit, Darlene R. McWreath and Robert McBride, were the executors of the Estate of David R. McWreath and both signed the Lease on behalf of the Estate. **Exhibit 1**. Defendant Range Resources-Appalachia, LLC[1] acquired an interest in the Lease by assignment. **Exhibit 2** (Affidavit of J. Kramer) at ¶ 8.

---

[1]     The Complaint incorrectly named Range Resources Corporation as the defendant. The parties stipulated that the proper defendant in this action is Range Resources-Appalachia, LLC.

**B.     The Lease**

The Lease encompasses the same mineral interests in the same property that Plaintiffs claim to own in their Complaint.[2] The Lease encompasses 1700.485 acres of real property in Washington County, Pennsylvania. **Exhibit 1**. The Lease identifies by Tax Parcel number each of the same properties in which the Plaintiffs claim a partial mineral interest. **Exhibit 1**, Lease at ¶ 2. Paragraph 7 of the Lease provides that the Plaintiffs own a 66 percent mineral interest in 368 acres and a 33% mineral interest in 1332.485 acres. **Exhibit 1**, Lease at ¶ 7. The Lease contains a five year primary term that continued for so long thereafter as a well capable of producing oil and gas is located on the property or on property that is pooled or unitized with the property or so long as lessors are receiving royalties or shut-in payments as provided for in the Lease. **Exhibit 1**, Lease at ¶ 3. The Plaintiffs allege that at least one well was drilled on the property, *see* Complaint at ¶ 5, and they do not dispute that the Lease was validly extended and remains in force and in effect.

The Lease provides that it is "Non-Surface Development" and Paragraph 4 states as follows:

> Lessor and Lessee acknowledge and agree that Lessee is not granted any right whatsoever: (i) to drill a well on any portion of the surface of the Leasehold; or (ii) install, construct or locate access roads or pipelines on any portion of the surface of the leasehold…

**Exhibit 1**, Lease at ¶ 4. In light of the fact that the Lease did not purport to convey any surface rights, Paragraph 4 of the Lease explained any surface development would have to occur on adjoining lands:

> Accordingly, any lands that have been pooled, unitized or combined with all or a portion of the Leasehold in accordance with the terms of this Lease shall bear the

---

[2]     The Complaint fails to even acknowledge the existence of the Lease that encompasses the mineral interests claimed by the Plaintiffs in the 1700.485 acres of property.

burden of all surface development. Lessor does, however, acknowledge and provide its consent to the possibility that a wellbore may pass through or terminate below the surface of the Leasehold as a result of slant or directional drilling operations originating from a surface entry on lands nearby or adjacent to the Leasehold.

**Exhibit 1**, Lease at ¶ 4.

C.  **The Surface Consent Agreements**

In February 2011, after the signing of the Lease, each Plaintiff executed a surface consent agreement in which they approved the location of Range's anticipated well sites on the surface of the property in which they owned a partial mineral interest. **Exhibits 3-6.** Specifically, these agreements provided that each Plaintiff was "the owner of property subject to that certain oil and gas lease executed by Estate of David R. McWreath, Executors: Darlene R. McWreath and Robert C. McBride… to Fortuna Energy Inc., dated September 20, 2007." **Id.**

The Agreements stated as follows:

WHEREAS, it is the intent of the undersigned to evidence the approval to RANGE RESOURCES-APPALACHIA, LLC of the well site(s), associated production equipment, access roads(s), and pipeline(s) to be utilized by RANGE RESOURCES-APPALACHIA, LLC in conducting operations under the above-referenced lease, and;

WHEREAS, the aforesaid location(s) shown on the Well Location Plat(s) of McWreath Units #1H, #2H, #3H, #4H, #5H, #6H, #7H, #8H, #9H, #10H, #11H, #12H, #13H, #14H, #15H, and#16H well(s) attached hereto as "EXHIBIT A".

NOW THEREFORE, In consideration of the payment of One ($1.00) Dollar and in consideration of the premises set forth herein, the undersigned parties do hereby consent to ratify and approve the location of the well site(s) associated production equipment, access road(s) and pipeline(s), as indicated on the plat attached as Exhibit A.

**Id.**

**D.     The Complaint**

Plaintiffs filed the Complaint on or about March 6, 2013, in the Court of Common Pleas of Washington County, Pennsylvania, which was timely removed to this Court.  The Complaint alleges that Plaintiffs are partial mineral owners of property situated in Washington County, Pennsylvania.  *See* Complaint at ¶¶ 3-4.  The Complaint further alleges that Range drilled at least one well on the surface of the property.  *See id.* at ¶ 5.  The Complaint further alleges that Range "does not have any Lease or other operating Agreement with Plaintiff[s] granting Range [] the right to drill a Well on the surface of the property for production of oil and gas from the property."  *See id.* at ¶ 6.  Count I alleges that Range is trespassing on the Plaintiffs' property and wrongfully producing gas.  *See id.* at ¶ 9.  Count II alleges that Range "has converted oil and/or gas from the Plaintiffs' property."  *See id.* at ¶ 11.  Count III alleges that "Plaintiffs are entitled to know of the volume of oil and/or gas removed from their property and sums paid for the same."  *See id.* at ¶ 13.  The Complaint seeks compensatory damages in excess of $50,000, punitive damages, costs, fees, and an accounting.  *See id.*

**E.     Range Acquires Leases and Surface Consent and Drills Two Wells.**

Range has also acquired oil and gas leases with the other partial mineral owners in the same property.  **Exhibit 2** (Affidavit of J. Kramer) at ¶ 9**.**  Range also entered into a surface consent agreement with the surface owner of the property, which approved the location of the wells on the surface of the property.  **Id.** at ¶ 14.  On or about May 24, 2012, Range designated the McWreath Unit 3H and 8H, recorded at instrument number 21021558 with the Recorder of Deeds, Washington County, Pennsylvania.  **Id.** at ¶ 10**.**  Range subsequently drilled and completed the McWreath Unit 3H and 8H wells.  **Id.** at ¶ 15.  Both wells are waiting on pipeline and neither well is currently producing oil or gas.  **Id.** at ¶ 15.

### F. Plaintiffs' Testimony Regarding Their Claims.

Plaintiffs testified by deposition as to their understanding of their claims and the agreements that relate to their claims.

Darlene McWreath and Robert McBride, the two executors identified on the Lease, admitted signing the Lease. **Exhibit 7** (Darlene McWreath Dep.) at 22-23; **Exhibit 8** (McBride Dep.) at 18-20. Plaintiffs testified that the Lease encompassed a partial mineral interest in the property that they inherited from the Estate of David R. McWreath, the party to the Lease. **Exhibit 7** (Darlene McWreath Dep.) at 10; **Exhibit 8** (McBride Dep.) at 7-8; **Exhibit 9** (Lundin Dep.) at 11-14; **Exhibit 10** (Deborah McWreath Dep.) at 7-8. Plaintiffs are not aware of owning any surface rights. **Exhibit 8** (McBride Dep.) at 9; **Exhibit 9** (Lundin Dep.) at 8. Plaintiffs have not objected to any surface activity nor have they even entered the surface. **Exhibit 7** (Darlene McWreath Dep.) at 12-13; **Exhibit 8** (McBride Dep.) at 9-10; **Exhibit 9** (Lundin Dep.) at 8-9. They do not know if the surface owner gave permission for oil and gas activities on the surface of the property. **Exhibit 9** (Lundin Dep.) at 8-9.

The Plaintiffs also admitted to signing the surface consent agreements. **Exhibit 7** (Darlene McWreath Dep.) at 15-16; **Exhibit 8** (McBride Dep.) at 12-13; **Exhibit 9** (Lundin Dep.) at 10; **Exhibit 10** (Deborah McWreath Dep.) at 11-13. Darlene McWreath testified that although she understood this agreement to say that Range would place wells on the locations on the map, she did not believe she actually gave permission for Range to do that. **Exhibit 7** (D. McWreath Dep.) at 18-20. She admitted that the agreement, however, said that she approved the locations. **Id.** Robert McBride testified that while he signed off on everything, he had never been on the property and did not even really know where the well sites were. **Exhibit 8** (McBride Dep.) at 15-16. Karen Lundin understood the agreement to mean that "Range

Resources could place wells on the property and actually where the well heads were placed" and "where the wells were going to be placed." **Exhibit 9** (Lundin Dep.) at 10-11. Deborah McWreath signed the agreement because her sister asked her to, but she did not read it and know what was in the agreement. **Exhibit 10** (Deborah McWreath Dep.) at 12-13.

No Plaintiff testified in support of the claims they made in the Complaint or their alleged money damages for Range's purported trespass and conversion of the oil and gas in the leased property. Rather, each Plaintiff testified that they were seeking a higher royalty. **Exhibit 7** (Darlene McWreath Dep.) at 6-7; **Exhibit 8** (McBride Dep.) at 5-6; **Exhibit 9** (Lundin Dep.) at 6; **Exhibit 10** (Deborah McWreath Dep.) at 5-6.

## LEGAL STANDARD

Summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying the portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). To withstand a motion for summary judgment, the nonmoving party must show a genuine dispute of material fact for trial by citing to particular parts of material in the record. *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* An issue is "genuine" if a reasonable jury could possibly hold in the non-movant's favor with regard to that issue. *See id.* "Where the record taken as a whole could not lead a reasonable trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"

*Matsushita*, 475 U.S. at 587. "[T]he plain language of Rule 56 mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322.

## ARGUMENT

A. **Plaintiffs Are Partial Mineral Owners Who Lack Standing To Object To Range's Use of the Surface.**

Plaintiffs' claims in this lawsuit are predicated on their belief that Range lacks the right to use the surface of the property to produce oil and gas. Plaintiffs lack standing to bring this claim because they do not own surface rights to the property.

Standing is a threshold issue in every case. *See Berg v. Obama*, 586 F.3d 234, 242 (3d Cir. 2009).[3] "In essence the question of standing is whether the litigant is entitled to have the court decide the merits of the dispute or of particular issues." *Silfies v. Webster*, 713 A.2d 639, 642 (Pa. Super. 1998) (quoting *Warth v. Seldin*, 422 U.S. 490, 498 (1975)). "The question of standing is rooted in the notion that for a party to maintain a challenge [to the disputed conduct] … he must be aggrieved in that his rights have been invaded or infringed." *Campbell v. Campbell*, 672 A.2d 835, 837 (Pa. Super. 1996). "The law of standing provides that one cannot evoke the jurisdiction of the court to enforce private rights or to maintain a civil action for the enforcement of such rights, unless he or she has, in an individual or representative capacity, some real interest in the cause of action, or a legal right, title or interest in the subject matter or

---

[3] Because this case is predicated on diversity jurisdiction, Plaintiffs must prove they have standing under both federal and state law. *See, e.g., Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 173 (2d Cir. 2005) ("Where [] jurisdiction is predicated on diversity of citizenship, a plaintiff must have standing under both Article III of the Constitution and applicable state law in order to maintain a cause of action"); *Cantrell v. City of Long Beach,* 241 F.3d 674, 683 (9th Cir. 2001); *Metropolitan Express Servs., Inc. v. City of Kansas,* 23 F.3d 1367, 1369 (8th Cir. 1994).

controversy." *Id.* "[A] plaintiff must demonstrate standing for each claim he seeks to press." *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 353 (2006).

Standing under federal law requires proof of three elements: (1) an "injury in fact"; (2) "a causal connection between the injury and the conduct complained of"; and (3) "a showing that it 'be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *N.J. Physicians, Inc. v. President of United States*, 653 F.3d 234, 238 (3d Cir. 2011). To demonstrate the first element of injury-in-fact, Plaintiffs must have suffered "an invasion of a legally protected interest which is (a) concrete and particularized … and (b) actual or imminent, not conjectural or hypothetical." *Lujan v. Defendants of Wildlife*, 504 U.S. 555, 560 (1992). In other words, "the injury must affect the plaintiff in a personal and individual way." *Id.* at 560, n.1. There must be a "personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief," and the plaintiffs must prove a "personal stake" in the dispute, such that the injury is "particularized as to [them]." *See Raines v. Byrd*, 521 U.S. 811, 818-19 (1997).

The formulation of standing under Pennsylvania is materially similar. In order to have standing under Pennsylvania law, a party "must be aggrieved in that his rights have been invaded or infringed." *South Whitehall Twp. Police Serv. v. South Whitehall Twp.*, 555 A.2d 793, 795 (Pa. 1989). This means a party must "(a) have a substantial interest in the subject-matter of the litigation; (b) the interest must be direct; and (c) the interest must be immediate and not a remote consequence." *Id.* "A 'substantial' interest is an interest in the outcome of the litigation which surpasses the common interest of all citizens in procuring obedience to the law." *Id.* (citations omitted). "A 'direct' interest requires a showing that the matter complained of caused harm to the party's interest." *Id.* (citations omitted). "An 'immediate' interest involves the nature of the

causal connection between the action complained of and the injury to the party challenging it." *Id.* (citations omitted). In short, both federal law and Pennsylvania law impose the same basic requirement on every plaintiff who brings a lawsuit: the plaintiff must have a direct, personal and legally cognizable right or interest that has been injured by the defendant and that can be redressed by the courts through the relief that is sought.

Plaintiffs here lack this very basic foundational requirement. The conduct they are challenging as wrongful is Range's placement of wells on the surface of the property. *See* Complaint at ¶ 6. However, they do not own surface rights – their interest is limited solely to a partial (primarily a minority) ownership in minerals beneath the surface of the property. "Pennsylvania law recognizes three estates in land: the surface estate, the mineral estate, and the right to subjacent (surface) support." *PAPCO, Inc. v. United States Forest Serv.*, 814 F. Supp. 2d 477, 495 (W.D. Pa. 2011) (citing *Consolidation Coal Co. v. White*, 875 A.2d 318, 326 (Pa. Super. 2011); *see also Minard Run Oil Co. v. United States Forest Serv.*, 2009 U.S. Dist. LEXIS 116520 (W.D. Pa. 2009). The estates are severable, and therefore "different owners may hold title to separate and distinct estates in the same land." *Consolidation Coal*, 875 A.2d at 326. In this case, the surface and the mineral estates are severed, and Plaintiffs admit owning only a partial mineral interest in the property. *See* Complaint at ¶ 4. Where the estates are severed, the mineral owner owes a service of support to the surface owner. *See id.* (quoting *Smith v. Glen Alden Coal Co.*, 32 A.3d 227, 235 (Pa. 1943)). The mineral owner, in turn, has an implied right to access the surface estate and extract the minerals without the consent of the surface owner. *See id.* (citing *Minard Run Oil*, 2009 U.S. Dist. LEXIS 116520). Notwithstanding these implied rights, the mineral and the surface estates are and remain separate and discrete interests, and in

this case, different owners hold legal title to the mineral estate and the surface estate in the property. *See Consolidation Coal*, 875 A.2d at 326.

As partial owners of the mineral estate in the property, Plaintiffs do not have any right, title or interest to the surface estate. Title to the surface estate is owned by a third party. **Exhibit 2** (Affidavit of J. Kramer) at ¶ 7. This is consistent with Plaintiffs' understanding of their rights. They admit they have never had any say in anything that occurred on the surface of the property, and in fact they do not know what is on the surface of the property. **Exhibit 7** (Darlene McWreath Dep.) at 12-13; **Exhibit 8** (McBride Dep.) at 9-10; **Exhibit 9** (Lundin Dep.) at 8-9; **Exhibit 10** (Deborah McWreath Dep.) at 9-10. Yet, the conduct they are challenging relates solely to Range's placement of wells on the surface of the property. Plaintiffs allege that Range "does not have any Lease or other operating Agreement with the Plaintiff granting Range Resources the right to drill a Well on the surface of the property for the production of oil and gas from the property." *See* Complaint at ¶ 7.

As Plaintiffs do not own surface rights, they have no legally protectable interest in the surface estate. It is therefore legally irrelevant that Plaintiffs claim that Range lacks a lease or operating agreement with them authorizing Range to use the surface. It would have been equally legally irrelevant for Range to enter into a lease or operating agreement with Plaintiffs to authorize it to use the surface for oil and gas production. Because Plaintiffs do not have surface rights, having an agreement with them conveying surface rights they do not own would be no more meaningful than having no agreement at all. Plaintiffs do not own the surface of the property and have no right to object to the use of the surface by any party, including the surface owner or Range. This is consistent with their practice of never having previously objected to the use of surface. Absent a legal right in the surface estate, they have no "injury-in-fact" resulting

from the use of the surface by Range nor any "direct interest" in what occurs on the surface, and therefore cannot meet their burden of providing standing under either federal or state law.

The fact that the Lease is titled as "Non-Surface Development" reflects nothing more than the fact that Plaintiffs are not the owners of the surface estate. This is explained in Paragraph 4 of the Lease, which provides that "Lessor and Lessee acknowledge and agree that Lessee is not granted any right whatsoever to (i) drill a well on any portion of the surface estate; or (ii) install, construct or locate access roads or pipelines on any portion of the surface of the Leasehold." **Exhibit 1**, Lease at ¶ 4. Plaintiffs could not "grant" any rights relating to the use of the surface estate because they had no rights to the surface estate. The Lease would have the same legal effect if Plaintiffs had explicitly granted every surface right imaginable to Range. Those are not rights the Plaintiffs had to give or take away because they do not own them. Nothing in the Lease precluded Range from obtaining rights to the surface estate from the actual owner the surface estate, which is what Range did.[4]

This case demonstrates the importance of enforcing the fundamental rule of standing that in order to bring a claim, a plaintiff must have a legally protected right that has been injured. Here, the party that owns the surface rights has consented to Range's drilling of wells on the surface of the property and is not objecting. **Exhibit 2** (Affidavit of J. Kramer) at ¶ 17. Plaintiffs, who do not own surface rights, are the only ones claiming that the use of the surface was wrongful. A straightforward application of standing principles, under either federal or state law, puts an ends to this plainly illogical premise that underlies the Complaint. Plaintiffs are partial mineral owners, not surface owners, and the placement of wells on the surface of the property not only does not impact any legal interest of theirs, particularly where the party that

---

[4] Plaintiffs do not claim that Range's production of oil and gas from the property breached the Lease in any respect.

actually owns the surface estate expressly permitted it. And because all of the claims in the Complaint are predicated on this flawed legal theory, Plaintiffs' lack of standing is fatal to the entire Complaint. Range is entitled to entry of summary judgment and the Complaint should be dismissed.

B. **Plaintiffs Gave Written Consent To The Use Of The Surface.**

Although Plaintiffs' lack of standing to object to Range's use of the surface is dispositive of their claims, in the alternative, Plaintiffs' claims fail because they actually gave explicit written consent to Range relating to the placement of wells on the surface of the property. Their allegations that the Range did not have a "lease" or "operating agreement" with Plaintiffs authorizing the use of the surface pleads around the fact that each Plaintiff signed a surface consent agreement, giving their "approval" to the location of the wells that Range ultimately drilled on the surface of the property, the McWreath Unit 3H and 8H wells. Those agreements, **Exhibits 3-6**, provide that "it is the intent of the undersigned to evidence approval to RANGE-RESOURCES APPALACHIA, LLC of the well site(s)…" and further that "the undersigned parties do hereby consent to ratify and approve the location of the well site(s), associated production equipment, access road(s) and pipeline(s) as indicated on the plat attached hereto as 'Exhibit A.'" To the extent that Plaintiffs had any kind of surface rights to convey or their consent to use the surface was required even thought they had no interest in the surface estate, these signed agreements provided that authority to Range and are binding on Plaintiffs. In fact, at least one of the Plaintiffs conceded that is exactly what she understood this agreement to mean. **Exhibit 9** (Lundin Dep.) at 10-11 (her understanding was that by signing the agreement, "Range Resources could place wells on the property...").

Because Plaintiffs signed written contracts approving, consenting and ratifying the location of wells on the surface of the property, they cannot now assert that the placement of the wells is a trespass or that production from the wells constitutes conversion. Trespass requires unlawful entry, and these agreements provide that any entry by Range is lawful. *See Gedekoh v. Peoples Natural Gas Co.*, 133 A.2d 283, 284-85 (Pa. Super. 1957) ("One cannot be guilty of a trespass by illegal entry … where such entry was by permission of the owner … A right of entry constitutes an absolute defense to an action in trespass."). Similarly, "a conversion requires a party to deprive a person's right of property without the owner's consent." *It's Intoxicating, Inc. v. Maritim Hotelgesellschaft mbH*, 2013 U.S. Dist. LEXIS 107149 (M.D. Pa. July 31, 2013); *see also Universal Premium Acceptance Corp. v. York Bank & Trust Co.*, 69 F.3d 695, 704 (3d Cir. 1995). Having approved and consented to Range's placement of wells on the surface, Plaintiffs cannot prove the essential element of their claim that Range acted without their consent. Finally, and underscoring the standing issue presented here, there can no trespass or conversion based on Range's use of the surface because the owner of the surface estate expressly permitted it. **Exhibit 2** (Affidavit of J. Kramer) at ¶¶ 14, 17.

C. **Plaintiffs Cannot Assert Tort Claims Because They Have A Lease With Range**.

Plaintiffs' claims for trespass and conversion also fail because they are parties to a Lease that authorizes Range to produce oil and gas from the property.

Under Pennsylvania law, trespass is a strict liability tort that requires proof of an "unprivileged, intentional intrusion upon land in possession of another." *Boring v. Google Inc.*, 362 F. Appx. 273, 280 (3d Cir. 2010). In order to maintain a trespass claim, "a plaintiff must have had the right to exclusive use and possession of the property at issue." *See Valley Rod & Gun Club v. Chesapeake Appalachia, LLC*, 2013 U.S. Dist. LEXIS 77436 (M.D. Pa. June 3,

2013). A trespass claim cannot be asserted against a party whom the plaintiff has surrendered its exclusive use possession and use of the property by leasing it. *See id.* at *12-13. For this reason, several federal district courts, applying Pennsylvania law, have reasoned that "a trespass action simply cannot lie against the lessee who then lawfully enters the property." *See Valley Rod*, 2013 U.S. Dist. LEXIS 77436 at *13-14 (lessor's trespass claim against oil and gas lessee failed as a matter of law because it was authorized to be on the property pursuant to the terms of the lease); *Roth v. Cabot Oil & Gas Corp.*, 919 F. Supp. 2d 476 (M.D. Pa. 2013) (same); *Graham Oil Co. v. B.P. Oil Co.*, 885 Supp. 716, 725 (W.D. Pa. 1994) (trespass claims against lessee who operated a gas station barred because lessee was authorized to be on property). As Plaintiffs leased away their exclusive right of possession in their mineral interests in the property to Range, the claim for trespass is not cognizable under Pennsylvania law.

The claim for conversion fails for the same reason. "Conversion has been defined as the deprivation of another's right of property in, or use or possession of, a chattel without the owner's consent and without lawful justification." *Chrysler Credit Corp. v. B.J.M., Jr.*, 834 F. Supp. 813, 844 (E.D. Pa. 1993). A plaintiff may assert a claim for trespass only "if he or she had either actual or constructive possession or an immediate right to possession or an immediate right to possession of the chattel at time of conversion." *Id.* (citing *Eisenhauer v. Clock Towers Assoc.*, 582 A.2d 33, 36 (Pa. Super. 1990)). Plaintiffs conveyed away any immediate right to possession of the oil and gas in the property pursuant to the Lease. Therefore they cannot claim that Range is converting minerals that are leased to Range.

D. **Plaintiffs Cannot Assert Tort Claims Because Their Cotenants Leased With Range.**

Alternatively, Range's leases with the cotenants that have the remaining interest (and for the most part, the majority interest) in the same minerals in the same property also preclude the

trespass and conversion claims. Under Pennsylvania law, a cotenant is free to explore for and produce oil and gas without the consent of his cotenants. *Markowicz v. Swepi LP*, 940 F. Supp. 2d 222, 228 (M.D Pa. 2013) (citing Kuntz, *A Treatise on the Law of Oil and Gas*, § 5.3 (Matthew Bender, Rev. Ed.) *and* Patrick H. Martin and Bruce M. Kramer, *Williams & Meyers*, *Oil and Gas Law*, § 502 (LexisNexis Matthew Bender 2012)). This means that a cotenant cannot preclude another cotenant from developing the oil and gas in the commonly-owned property. *See Lichtenfels v. Bridgeview Coal Co.*, 496 A.2d 782, 785 (Pa. Super. 1985) ("Another special rule relating to the mineral estate is that a tenant cannot restrain a cotenant with an undivided interest in the land from realizing the value of the estate by producing or consuming the underlying minerals."). "The analysis is not changed by the cotenant's choice to lease his or her exploration and production rights to another." *Markowicz*, 940 F. Supp. 2d at 228; *see also McIntosh v. Ropp*, 82 A. 949, 954 (Pa. 1912) ("The fact that the actual operations were carried on by third parties under a lease, and not directly by [the cotenant], would not serve to make the [lessees] trespassers, or to cause them to be regarded other than as cotenants.").

Range has leases with the other cotenants who own the mineral interests in the property. **Exhibit 2** (Affidavit of J. Kramer) at ¶ 9. Accordingly, it may produce the minerals beneath the property pursuant to the leases of the cotenants. Because Range's production of oil and gas is lawful pursuant to the leases of the cotenants, it cannot be liable for trespass or conversion.

E.   **Plaintiffs Have Not Proven A Legal Basis For A Court-Ordered Accounting.**

Count III of the Complaint alleges that "Plaintiffs are entitled to know the volume of oil and/or gas removed from their property and the sums paid for the same" and seeks an accounting from Range "itemizing volumes of oil and gas removed from the Plaintiffs Property and the monies received from the sale of the same." *See* Complaint at ¶ 13 and WHEREFORE Clause.

This claim fails because Plaintiffs have neither alleged nor proven the legal prerequisites for obtaining a court-ordered accounting under Pennsylvania law.

"Under Pennsylvania law, the entitlement to an accounting may be legal or equitable." *Lightman v. Marcus*, 2012 U.S. Dist LEXIS 54322 (E.D. Pa. April 17, 2012) (citing *Buczek v. First Nat. Bank of Mifflintown*, 531 A.2d 1122, 1123 (Pa. Super. 1987)). In this case, the Complaint does not allege whether this claim for accounting is in law or in equity, but in any event, they are entitled to neither. "In Pennsylvania, the right to an accounting at law is a form of relief that attaches only where the defendant has breached a valid contract with the plaintiff." *Lightman*, 2012 U.S. Dist. LEXIS 54322 at *10-11 (citing *Haft v. U.S. Steel Corp.*, 499 A.2d 676, 677-78 (Pa. Super. 1985)); *see also Buczek*, 531 A.2d at 1123 (an accounting at law is relief that is incident to a proper breach of contract claim). Plaintiffs do not allege that Range breached any written agreement with them nor have they shown they have a contractual right to an accounting. Accordingly, they cannot maintain a claim for an accounting at law. *See Lightman*, 2012 U.S. Dist. LEXIS 54322 at *11.

Plaintiffs have not met their burden of showing that circumstances exist supporting a court-ordered equitable accounting either. As described by the Third Circuit, "[a]n accounting is an essentially equitable remedy, the right to which arises generally from the defendant's possession of money or property which, because of some particular relationship between himself and the plaintiff, the defendant is obliged to surrender." *American Air Filter Co. v. McNichol*, 527 F.2d 1297, 1300 (3d Cir. 1975). "An equitable accounting is improper where no fiduciary relationship exists between the parties, no fraud or misrepresentation is alleged, the accounts are not mutual or complicated, or the plaintiff possesses an adequate remedy at law." *Schirmer v.*

*Principal Life Ins. Co.*, 2008 U.S. Dist. LEXIS 101646 (E.D. Pa. Oct. 29, 2008) (quoting *Rock v. Pyle*, 720 A.2d 137, 142 (Pa. Super. 1998)).

None of these circumstances justifying equitable intervention by the Court exist here. There is no fiduciary relationship between Range and Plaintiffs, as their relationship is governed by the Lease and the other written contracts they signed. **Exhibits 1, 3-6**. There is no fraud or misrepresentation alleged. *See generally*, Complaint. There are no allegations and no proof that the accounts are mutual and complicated. Nor can Plaintiffs claim that they do not possess an adequate remedy at law. Plaintiffs asserted trespass and conversion claims and sought damages relating to the oil and gas produced from the property in which they have a partial mineral interest. Nevertheless, Plaintiffs did not take any factual discovery relating to these claims or the damages they believe they incurred – in fact, Plaintiffs did not issue any formal discovery in this case at all. Plaintiffs cannot now rely on an equitable accounting theory to get information they could have gotten through discovery but chose not to. *Centrix HR, LLC v. On-Site Staff Mgmt.*, 2008 U.S. Dist. LEXIS 43629, *33-34 (E.D. Pa. June 3, 2008) ("an accounting request is not a substitute for plaintiffs' obligation to establish their damages through discovery … An accounting should not be used to aide a party who otherwise failed to satisfy his burden of proof on the damages issue.") (citations and quotations omitted). Plaintiffs took no discovery relating to their purported damages on their trespass and conversion claims, and should not be allowed to fall back on a theory of an equitable accounting to fill this evidentiary gap.

Moreover, a request for a court-ordered accounting is not appropriate until Plaintiffs make a demand for information and the demand is refused:

> The right to an accounting in equity usually depends on a previous demand and refusal. Defendants' pleading does not aver that a demand was made upon [plaintiff] for an accounting by or on the behalf of [defendant]. Having failed to act seasonably, and having failed to reasonably ascertain whether [defendant] has

any cause to demand an accounting, [defendant] cannot now prevail on that aspect
of the counterclaim.

*See Hohman v. Dabulski*, 2009 Pa. Dist. & Cnty. Dec. LEXIS 207 (Allegheny Cty. 2009) (citing 1A C.J.S. Accounting § 29).  Plaintiffs did not ask for any information relating to the volume of gas produced from the property in which they have a partial mineral interest or the sales price of that gas prior to filing a lawsuit for an accounting.  And they did not bother trying to get the information during fact discovery either.  On this record, equitable intervention by the Court to impose an accounting where Plaintiffs have not tried to help themselves is not warranted.

Finally, there is nothing to account for, and ordering and an accounting at this time would be an empty exercise.  Neither well is in production.  **Exhibit 2** (Affidavit of J. Kramer) at ¶¶ 16-17.  Range is therefore entitled to summary judgment on this claim.

## CONCLUSION

For the reasons explained above, Range is entitled to entry of summary judgment.  This case should be dismissed.

/s/ Justin H. Werner
Kevin C. Abbott
PA ID 35734
Nicolle R. Snyder Bagnell
PA ID 87936
Justin H. Werner
PA ID 203111

REED SMITH LLP
225 Fifth Avenue, Suite 1200
Pittsburgh PA, 15222
412-288-3804
412-388-3063 (FAX)

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

The undersigned hereby certifies that a true and correct copy of the foregoing has been served via ECF on all counsel of record.


Dated:  March 31, 2014                                                        /s Justin H. Werner